UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRIS CANARD,

        Plaintiff,

     v.

KYLE BRICKER, et al.,

        Defendants.

Case No.  14-cv-04986-JSC

**ORDER RE  MOTION TO DISMISS**

Re: Dkt. No. 8

Plaintiff Chris Canard ("Plaintiff") seeks to recover damages from Kyle Bricker ("Bricker") and 32K Studios, LLC ("32K Studios" or the "Company" and together, "Defendants") based on allegations of misconduct in connection with of 32K Studios' alleged refusal to perform under an option agreement for the repurchase of Canard's prior membership interest in 32K Studios.  (*See* Dkt. No. 1 ¶ 1.)  In the five-count complaint, Plaintiff contends that Defendants' conduct constitutes breach of contract, unjust enrichment, tortious interference with contract, fraud, and conversion.  (*Id.* ¶¶ 10-32.)  Now pending before the Court is Defendants' Motion to Dismiss counts three and four of the complaint, which allege interference with contract and fraud. (Dkt. No. 8.)  After carefully considering the parties' submissions, the Court concludes that oral argument is unnecessary and VACATES the February 26, 2015 hearing.  The Court DENIES the motion with respect to Plaintiff's third count, alleging intentional interference with emotional distress, and GRANTS the motion with respect to Plaintiff's fourth count, alleging fraud, with leave to amend.

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff owned a 44% interest in 32K Studios, a San Francisco-based California limited liability company.  (Dkt. No. 1 ¶¶ 6-7.)  In 2012, Plaintiff was involved in a legal matter in Texas.

United States District Court
Northern District of California

(*Id.* ¶ 7.)  Bricker asked Plaintiff to temporarily transfer his interest in 32K Studios back to the Company to insulate the Company from any ramifications related to Plaintiff's legal matter in Texas.  (*Id.*)  Bricker suggested that Plaintiff enter an Option Agreement with 32K Studios to effect this purpose.  (*See id.* ¶¶ 7-8.)  Bricker assured Plaintiff that the Option Agreement "was simply a way to protect 32K Studios" while the Texas legal matter was pending, and that Plaintiff "would have his interest returned as soon as that matter was resolved."  (*Id.* ¶ 7.)

Heeding Bricker's suggestion, Plaintiff entered an Option Agreement with 32K Studios on August 1, 2012.  (*Id.* ¶ 8.)  Pursuant to the terms of the Option Agreement, 32K Studios purchased Plaintiff's 44% interest in the Company for $4000, and in exchange Plaintiff received an "option grant"—*i.e.*, the option to repurchase his share in the Company.  (*Id.* ¶ 8 & Ex. A.)  That purchase price was a nominal value, as the estimated value of Plaintiff's 44% interest in 32K Studios is upwards of $2,000,000.  (*Id.* ¶ 8.)

On October 16, 2013, Plaintiff exercised his repurchase option in an e-mail sent to Bricker.  (*Id.* ¶ 9.)  Bricker refused, and has continued to refuse, to reissue Plaintiff his 44% ownership interest in 32K Studios.  (*Id.*)  Plaintiff contends that he is entitled to the value of his 44% ownership interest in the Company as well as profit distributions he would have received had 32K Studios properly reissued his ownership interest in the Company on October 16, 2013.  (*Id.*)

### LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

United States District Court
Northern District of California

2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In particular, the complaint must include specificity regarding the charged conduct, including the "who, what, when, where, and how." *Reed v. Wells Fargo Bank*, No. C-11-00194-JSW, 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011); *see also Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (same). "[T]he circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

United States District Court
Northern District of California

3

United States District Court
Northern District of California

**DISCUSSION**

Defendants move to dismiss two of the five counts of Plaintiff's complaint:  intentional inference with contract (against Bricker), and fraud (against both Defendants).

**1,     Count Three:  Intentional Interference with Contract**

Defendants first seek to dismiss Plaintiff's third count, which alleges that Bricker's conduct constitutes intentional interference with Plaintiff's contract with 32K Studios.  (Dkt. No. 8 at 5.)  Defendants contend that the "manager's privilege" shields Bricker from liability for any such conduct.  (*Id.*)  Plaintiff argues that this privilege does not protect Bricker because the complaint alleges that Bricker acted with an improper purpose.  The Court concludes that the manager's privilege does not bar the claim from proceeding at this stage of the litigation.

To state a claim for intentional interference with contract, a plaintiff must allege facts to support the following elements:  "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *CRST Van Expedited, Inc. v. Warner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998)).  The parties appear to agree that the complaint sufficiently alleges that Bricker had knowledge of the Option Agreement, took intentional acts designed to prevent Plaintiff from exercising his rights under the Option Agreement, actually prevented Plaintiff from doing so, and Plaintiff has been damaged as a result.  Rather, the only element at issue here is the first, which explores the relationship among the plaintiff, the defendant, and the contracting third party.

"California law has long recognized a cause of action against a defendant who intentionally induces a third person to breach his contract with another, but only if he does so without a privilege."  *Harrison Ventures, LLC v. Alta Mira Treatment Ctr., LLC*, No. C 10-00188 RS, 2010 WL 1929566, at *5 (N.D. Cal. May 12, 2010) (citations omitted).  A privilege "exists whenever a person induces a breach of contract through lawful means in order to protect an interest that has a greater social value than the mere stability of the particular contract[,]" and "is

4

designed to protect the important interests served by the confidential relationship between a fiduciary and his principal." *Id.* (citation omitted).  The existence of such a privilege is "an affirmative defense to liability for intentional interference with contract." *Oxycal Labs., Inc. v. Patrick*, 8 F. App'x 761, 764 (9th Cir. 2001) (citations omitted).  Where the complaint affirmatively alleges facts amounting to an affirmative defense, it is subject to dismissal. *Halvorsen v. Aramark Uniform Servs., Inc.*, 65 Cal. App. 4th 1383, 1391 (1998) (citation omitted).

The so-called "manager's privilege" is one such privilege, and it "protects a company's manager from liability to a third party for advising or inducing the company to breach its contract with the third party." *O'Grady v. CONMED Corp.*, No. C 13-5242 CW, 2014 WL 794028, at *4 (N.D. Cal. Feb. 26, 2014) (citing *Klein v. Oakland Raiders, Ltd.*, 211 Cal. App. 3d 67, 80 (1989), and *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 326 (9th Cir. 1982)).  Courts have applied the manager's privilege to cases in which a manager is accused of inducing his employer to breach employment contracts with other employees, *Farris v. Int'l Paper Co.*, No. 5:13-cv-00485-CAS(SPx), 2014 WL 3657051, at *7 (C.D. Cal. July 21, 2014); *Letch v. Safeway Stores, Inc.*, No. C-05-1781-MMC, 2005 WL 2206699, at *6 (N.D. Cal. Sept. 12, 2005), contracts governing equipment supplied from third-party vendors, *Olivet v. Frischling*, 104 Cal. App. 3d 831, 841 (1980), *disapproved on other grounds by Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503 (1994), and contracts governing leases between landlords and tenants, *Harrison Ventures*, 2010 WL 1929566, at *6.  In all of these contexts, courts have found the manager who induced the breach protected from liability for intentional interference with contract resulting from the corporation's breach on advice of the manager.  In sum, the privilege applies when "[a] business advisor counsel[s] his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests." *Harrison Ventures*, 2010 WL 1929566, at *6 (citation omitted).

Moreover, the Ninth Circuit has held that the privilege applies even when "[t]he advisor is motived *in part* by a desire to benefit his principal." *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982) (emphasis added).  In other words, "the manager may *not* be held liable for interference with contractual relations if [his] predominant motive [for inducing the breach] is proper, even if there is a coexistent but nonpredominant improper motive." *Halvorsen*, 65 Cal.

App. 4th at 1392; *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1196 (2003) (holding that where the manager stands to reap a personal benefit from inducing the breach, the manager's privilege does not apply unless trier of fact concludes that manager's predominant motive was to benefit principal);  *see also Los Angeles Airways*, 687 F.2d at 328 (noting that the managerial privilege applies where the manager acted at least in part for the principal's benefit); *O'Grady*, 2014 WL 794028, at *4 (noting that the managerial privilege may be lost where the manager acts with improper intent).

Here, the complaint alleges that Bricker was acting "with improper motive" when he induced 32K Studios to breach the Option Agreement.  (Dkt. No. 1 ¶ 23.)  Elsewhere, the complaint alleges that Bricker is unjustly benefitting from 32K Studios' breach because he "is receiving significant additional income because he can raise his and his wife's salaries without any oversight from other members, and because he is able personally to retain all net profits that would otherwise be distributed to" Plaintiff, in whose absence Bricker controls a supermajority of the outstanding membership interests in the Company.  (*Id.* ¶¶ 17-18.)  Taken together, and accepting the facts alleged in the complaint as true as the Court must, *see Manzarek*, 519 F.3d at 1031, these allegations sufficiently allege that Bricker's interference with the contract between Plaintiff and 32K Studios—notwithstanding the fact that Bricker signed the contract as 32K Studios' manager—was motivated predominantly by an improper purpose that strips him of the protection of the manager's privilege.  *See Los Angeles Airways*, 687 F.2d at 328; *O'Grady*, 2014 WL 794028, at *4; *Huynh*, 111 Cal. App. 4th at 1198.

Defendants' arguments to the contrary are unavailing.  First, Defendants insist that the manager's privilege is absolute so long as the manager is acting within the scope of his employment.  But although earlier California case law suggested that there were three different iterations of the manager's privilege, some of which recognized an *absolute* privilege that did not take into account he manager's subjective motivations, *see Halvorsen*, 65 Cal. App. 4th at 387, California courts have since taken an approach that squares with the Ninth Circuit's:  motive matters.  *Compare Halvorsen*, 65 Cal. App. 4th at 387; *Mallard v. Boring*, 182 Cal. App. 2d 390, 393 (1960); and *Lawless v. Bhd. of Painters*, 143 Cal. App. 2d 474, 478 (1956), *with Huynh*, 111

1    Cal. App. 4th at 1196.

2          Defendant's next argument—that the manager's privilege applies under Nevada law—is

3    also unpersuasive.  First, Defendant has not established that Nevada law governs the claim.  Since

4    this case is in federal court on diversity jurisdiction, the choice-of-law rules of California apply.

5    *See Bruno v.Quten Research Inst., LLC*, 280 F.R.D. 524, 538 n.7 (C.D. Cal. 2011).

> California courts follow "a three-step 'governmental interest
> analysis' to address conflict of laws claims and ascertain the most
> appropriate law applicable to the issues where there is no effective
> choice-of-law agreement."  First, "the foreign law proponent must
> identify the applicable rule of law in each potentially concerned state
> and must show that it materially differs from the law of California."
> Second, a court must determine "what interest, if any, each state has
> in having its own law applied to the case."  "If application of a
> foreign decisional rule will not significantly advance the interests of
> the foreign state, a California court will conclude that the conflict is
> 'false' and apply its own law."  The third step, which a court only
> reaches upon the determination that a foreign decisional rule
> significantly advances the interests of the foreign state, requires a
> court to examine the "comparative impairment" to each states[']s
> interest that would result from the choice of one rule over the other.
> "In making this comparative impairment analysis, the trial court
> must determine 'the relative commitment of the respective states to
> the laws involved' and consider 'the history and current status of the
> states' laws' and the 'function and purpose of those laws.'"

16   *Avago Techs. U.S., Inc. v. Venture Corp. Ltd.*, No. C 08-03248 JW, 2011 WL 7479163 *3 (N.D.

17   Cal. May 23, 2011) (internal quotation marks and citations omitted).  Defendants have not

18   engaged in this analysis; instead, they merely assert that because 32K is a Nevada limited liability

19   corporation Nevada law applies.[1]  Not so.

20         Second, even assuming Nevada law applies, Defendants have not established that it is

21   materially different from California law as to the application of the manager's privilege.

22   Defendants cite *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005), for the proposition

23   that the only relevant consideration under Nevada law is whether a manager is acting within the

24   scope of his employment.  But the *Blanck* court expressly noted that Nevada courts had not yet

25   addressed this issue, and—more importantly—cabined its short analysis to breach-inducing

26

27   _____

28   [1] Notably, with respect to their contention that Plaintiff's fraud claim must be dismissed,
     Defendants abandon their argument that Nevada law applies, focusing entirely on cases
     interpreting California law.

United States District Court
Northern District of California

7

conduct of employees acting *in the principal's interest*.  *Id.*  This short analysis suggests that the manager's privilege would not apply to the extent that a manager is acting with some improper motive that is not in the best interest of the employer/company.

Defendants' remaining argument, which hinges on facts outside of the four corners of the complaint, fares no better.  Defendants contend that "[t]he Complaint and judicially noticeable facts also reveal a host of reasons why Mr. Bricker acted at least <u>in part</u> for the benefit of 32K Studios."  (Dkt. No. 11 at 4.)  To that end, Defendants ask the Court to judicially notice under Federal Rule of Civil Procedure 201 Plaintiff's Texas state conviction for money laundering and engaging in organized criminal activity for gambling offenses.  (*Id.*)  Such a fact is judicially noticeable as a court record, *see, e.g.*, *Muhammed v. California*, No. C-10-01449-YGR, 2012 WL 669434, at *5 (N.D. Cal. 2012), and the Court therefore grants Defendants' request.  However, Plaintiff's conviction does not lead inexorably to the conclusion that Defendants push:  that 32K Studios had a strong interest in not having a convicted felon have ownership in the Company, represent the Company, or interact with its customers.  (Dkt. No. 11 at 4.)  While these facts may be true—and proceeding through discovery may well reveal that to be the case—Defendants in effect ask the Court to ignore the well-pleaded allegations in the Complaint about Bricker's actual motivation, which the Court cannot do at this stage of the litigation.  Thus, drawing all inferences in Plaintiff's favor, even in light of his criminal conviction, the complaint has alleged facts that demonstrate that Bricker's predominant motivation was personal, rendering the manager's privilege outside of Bricker's grasp.  Concluding otherwise and accepting Defendants' arguments regarding the true motivations behind Bricker and 32K Studios' decision not to honor the Option Agreement would require the Court to resolve disputed inferences in Defendants' favor.  This is plainly impermissible on a motion to dismiss.

Accordingly, Plaintiff's third count of intentional interference with contract survives Defendants' motion to dismiss.

**2.     Count Four:  Fraud**

The same is not true for Plaintiff's fraud claim.  The gravamen of Plaintiff's claim for fraud is that neither Bricker nor 32K Studios ever intended to honor the Option Agreement and

failed to disclose that fact.  (*See* Dkt. No. 1 ¶¶ 26-28.)  Defendants seek to dismiss this count on the grounds that it fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  (*See* Dkt. No. 8 at 3-4; Dkt. No. 11 at 1-2.)  Plaintiff contends that the fraud claim is adequately pleaded, but offers to amend the claim to add further detail if the Court disagrees.  (Dkt. No. 10 at 3 n.2.)

Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9.  Thus, the Ninth Circuit has held that, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule."  *Vess*, 317 F.3d at 1103.  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

When the complaint highlights a particular statement as false, it must also "set forth what is false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  Notably, to qualify as a misrepresentation, the complaint must allege facts sufficient to plausibly establish that the statement was false when made.  *Id.*; *see also Richardson v. Reliance Nat'l Indem. Co.*, No. C-99-2952-CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) ("Rule 9(b) requires plaintiffs to plead facts establishing the falsity of a statement *at the time it is made*." (emphasis in original)).  Mere conclusory allegations of the statements' falseness are insufficient.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.  Rather, to plead falseness, the plaintiff must provide "an explanation as to why the disputed statement was untrue or misleading when made[,]" which may be done "by pointing to inconsistent contemporaneous statements or information" or a "later statement by the defendant along the lines of 'I knew it all along[,]'" *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1549 & n.9, or circumstantial evidence that explains why the statement was misleading when made.  *Richardson*, 2000 WL 284211, at *5 (citation omitted).  Such circumstantial evidence may include the "shortness of time

1    between later revealed truth and prior statements[.]"  *In re Stratosphere Corp. Sec. Litig.*, 1 F.

2    Supp. 2d 1096, 1112 (D. Nev. 1998).

3       Here, Plaintiff alleges that Bricker had 32K Studios enter the Option Agreement with

4    Plaintiff but never intended to honor the contract—*i.e.*, he never intended to allow Plaintiff to

5    exercise his right to repurchase his interest in the Company, and committed fraud by failing to

6    disclose this fact.  (Dkt. No. 1 ¶ 26 ("neither Defendant ever intended to honor the Option

7    Agreement, and the Option Agreement was a mere sham to enable Bricker to gain complete

8    control of 32K Studios.").)  In essence, Plaintiff's claim sounds in "promissory fraud," which "is a

9    subspecies of fraud which permits a plaintiff to state a cause of action in tort when a defendant

10    fraudulently induces him to enter into a contract."  *Richardson*, 2000 WL 284211, at *4 (citation

11    omitted).  In short, "[w]hile mere failure to perform on a contract does not constitute fraud, a

12    promise made *without the intention to perform* can be actionable fraud."  *Id.* (emphasis in original)

13    (citations omitted).  However, Plaintiff's complaint falls short of pleading a claim for promissory

14    fraud for two reasons.

15       First, Plaintiff fails to identify the time, place, and content of any purported misrepresented

16    fact or omission of material fact.  The sole allegations regarding the timing of alleged false

17    statements in the complaint is the day the Option Agreement was executed:  August 1, 2012.  (*See*

18    Dkt. No. 1 ¶ 8.)  But the complaint is silent on where the contract was executed and when and

19    where Bricker made the statement that the Option Agreement was "simply a way to protect 32K

20    Studios during the pendency of [Plaintiff's] legal matter, and that [Plaintiff] would have his

21    interest returned as soon as that matter was resolved."  (*Id.* ¶ 8.)

22       Moreover, Plaintiff has failed to allege facts sufficient to support a plausible inference that

23    the statements were actually false when made.  Plaintiff argues that Defendants' later failure to

24    honor the Agreement indicates that the statements were false when made, as does the conclusory

25    assertion that the Option Agreement "was a mere sham to enable Bricker to gain complete control

26    of 32K Studios."  Courts, however, have oft rejected the argument that a plaintiff can prove the

27    fraudulent intent by simply pointing to the defendant's subsequent failure to perform under the

28    agreement.  *See, e.g.*, *Bio-Horticultura Las Parritas, S.A. de C.V. v. Aviara Parkway Farms, Inc.*,

United States District Court
Northern District of California

No. 14cv0892-WQH-DHB, 2014 WL 4955711, at *4 (S.D. Cal. Sept. 30, 2014); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001); *Richardson*, 2000 WL 284211, at *4.

For example, in *Smith v. Allstate Insurance Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001), the court called "specious" the argument that a plaintiff can premise a fraud claim on the grounds that the defendant never intended to honor the contract. *Id.* The *Smith* court explained that such an argument "assumes that the alleged breach of contract can be used as evidence that [the defendant] never intended to honor the contract, thereby committing fraud[,]" but this assumption "contradicts the heightened pleading requirements of Rule 9(b) and would allow every breach of contract to support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." *Id.* at 1154-53 (internal quotation marks, citations, and alterations omitted); *see also Richardson*, 2000 WL 284211, at *5 ("Adopting plaintiff's argument would effectively eviscerate the effect of Rule 9(b) in every case of promissory fraud. Under plaintiff's theory, every breach of contract would support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise."). So it is here: Plaintiff cannot turn his breach of contract case into a fraud case by merely alleging that Bricker never intended for 32K Studios to honor the contract and by pointing to the eventual breach.

Second, the sole remaining allegation that Plaintiff offers to explain why the statements were false when made falls short of the particular facts that Rule 9(b) requires. Plaintiff offers only the conclusory assertion that his statements, and the entire Option Agreement, were part of a "mere sham to enable Bricker to gain complete control of 32K Studios." (*See* Dkt. No. 10 at 2-3.) To be sure, if accepted as true this allegation might provide context for Plaintiff's allegation that the initial offer for an option agreement and the eventual Option Agreement itself were false when made unlike *Smith* and *Richardson*, which focused only on the breach as evidence of falsity, *cf. Smith*, 160 F. Supp. 2d at 1153-54; *Richardson*, 2000 WL 284211, at *5, but the allegation itself is entirely conclusory. Indeed, it is far from the inconsistent contemporaneous statements or information or circumstantial evidence that courts have found sufficient to allege promissory fraud. *See, e.g., Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 639 (1996) (finding sufficient allegations that

1    defendant's promises of permanent employment and salary increase were false when made as

2    evidence by the defendant's policies to the contrary and planned merger, which would have

3    eliminated the plaintiff's promised job).  Moreover, accepting such a conclusory allegation that the

4    contract was a "mere sham" from the standard would likewise eviscerate Rule 9(b)'s particularity

5    requirement, as any plaintiff alleging breach of contract could simply add an allegation that the

6    contract itself was a sham from the start to bring a claim for fraud.  This cannot be what Rule 9(b)

7    envisions.  Thus, the Complaint fails to plead promissory fraud with particularity.

8        Finally, Plaintiff's argument that his fraud claim presents the exact type of scenario

9    referred in *GlenFed* as a "simple fraud claim" misses the mark.  In *GlenFed*, the Ninth Circuit

10   addressed whether the plaintiff's claims for securities fraud met the heightened pleading

11   requirements of Rule 9(b).  42 F.3d at 1548.  The *GlenFed* court made a distinction between

12   statements that are untrue at the time the statement was made, and statements that might have

13   become untrue at a later point in time due to intervening events.  *Id.* at 1548-49.  The court noted

14   that the former category of statements can be pleaded with more simplicity, and used the example

15   of a defendant who, in connection with selling a home to the plaintiff-buyer, assures the plaintiff

16   that the property is in perfect shape, but it turns out the house was built on a landfill.  *Id.* at 1548.

17   The Court found this to be a simple fraud claim to plead because the "house was *always* defective

18   because it was *always* built on a landfill[,]" so it is relatively easy to plead the circumstance

19   constituting fraud.  *Id.*  Plaintiff urges the Court to conclude that his fraud claim is "exactly the

20   [same] scenario":  Bricker assured Plaintiff that his interest in the Company would be returned to

21   him but he did not have this intent.  (Dkt. No. 10 at 2-3.)  But Plaintiff's claim is not so simple:

22   Bricker's comments are not the type of statements that are easily labeled as inconsistent.  Whereas

23   the "simple scenario" in *GlenFed* dealt with conflicting statements of fact, the allegations in this

24   complaint deal with Defendant's statements of future intent.  They are not analogous.

25        For each of these reasons, the complaint as written fails to plead fraud with particularity

26   and must be dismissed.  However, Plaintiff will be given leave to amend this claim to comply with

27   the case law set forth above; that is, Plaintiff shall have the opportunity to provide the when and

28   where of each purported misrepresentation along with actual *facts* that support a plausible

inference that the statements were false when made.  If Plaintiff is unable to add such allegations, his claim for fraud will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff's fourth count alleging fraud is dismissed for failure to plead fraud with particularity.  Plaintiff is given leave to amend this count by March 13, 2015.

This Order disposes of Docket No. 8.

**IT IS SO ORDERED**.

Dated:  February 24, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California