1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    CHRIS CANARD,                           Case No.  14-cv-04986-JSC

              Plaintiff,
8
                                             **ORDER RE: MOTION TO DISMISS**
9         v.
                                             Re: Dkt. No. 16
10   KYLE BRICKER, et al.,

              Defendants.
11

12

13        Plaintiff Chris Canard ("Plaintiff") seeks to recover damages from Kyle Bricker

14   ("Bricker") and 32K Studios, LLC ("32K Studios" or the "Company" and together, "Defendants")

15   based on 32K Studios' alleged refusal to perform under an option agreement for the repurchase of

16   Canard's prior membership interest in 32K Studios.  (*See* Dkt. No. 16 ¶ 1.)  Plaintiff contends that

17   Defendants' conduct constitutes breach of contract, unjust enrichment, tortious interference with

18   contract, fraud, and conversion.  (*Id.* ¶¶ 12-34.)  The Court earlier granted Defendants' motion to

19   dismiss the fraud count, concluding that a claim of promissory fraud was not adequately pled.

20   *Canard v. Bricker*, No, 14-cv-04986-JSC, 2015 WL 846997, at *7 (N.D. Cal. Feb. 25, 2015).

21   Plaintiff has since amended the fraud claim by filing a first amended complaint ("FAC").  (Dkt.

22   No. 16.)  Now pending before the Court is Defendants' second Motion to Dismiss, which seeks to

23   dismiss the fraud count, contending that the amendments do not cure the defects the Court

24   previously identified.  (Dkt. No. 21.)  Having carefully considered the parties' submissions, and

25   having had the benefit of oral argument on April 30, 2015, the Court DENIES Defendants'

26   motion.

27

28

United States District Court
Northern District of California

**BACKGROUND**

**I.     Allegations of the First Amended Complaint**

The factual background of this complaint is documented in the Court's Order granting in part the initial Motion to Dismiss.  *See Canard*, 2015 WL 846997, at *1.  Plaintiff has now amended the complaint to include additional facts to support his fraud claim, the gravamen of which is that when Bricker directed Canard to sign an option agreement forfeiting his share of 32K Studios, Bricker never intended to honor the option agreement, and instead intended all along to keep Canard's share of the company.  The newly-added allegations are set forth below.

After Plaintiff became involved in a Texas legal matter in August 2012, he and Bricker had a number of phone calls during which Bricker asked Plaintiff to temporarily transfer his interest in 32K Studios back to the Company to insulate it from any legal consequences.  (Dkt. No. 16 ¶ 7.) To do so, Bricker suggested that Plaintiff enter an Option Agreement with 32K Studios.  (*See id.* ¶¶ 7-8.)  Bricker assured Plaintiff that the Option Agreement "was simply a way to protect 32K Studios" while the Texas legal matter was pending, and that Plaintiff "would have his interest returned as soon as that matter was resolved."  (*Id.* ¶ 7.)  At the end of August, Plaintiff met with Bricker in person in Fort Worth, Texas, where Bricker made the same representations about the Option Agreement.  (*Id.*)  At that meeting in Fort Worth, Bricker presented Canard with an Option Agreement that was backdated to August 1, 2012.  (*Id.*)  They entered into the Option Agreement thereafter.  (*Id.* ¶ 8.)

After Plaintiff and Bricker entered into the Option Agreement, Bricker gave Donald Canard, "the only other apparent voting member of 32K Studios,"[1] a document titled "Unanimous Consent in Lieu of a Special Meeting of Members of 32K Studios, LLC" (the "Consent Action"). (*Id.* ¶ 9.)  The Consent Action made Bricker the "sole manager and officer of 32K Studios, rescinded the company's bylaws, and transferred" Plaintiff's 44% interest in 32K Studios to Bricker "without any payment."  (*Id.*)  Bricker threatened to "shut down 32K Studios," Donald

_____

[1] Plaintiff does not provide any further details about who Donald Canard is or what his relationship is to Plaintiff, but in their opposition Defendants note the Donald Canard is Plaintiff's brother. (Dkt. No.

United States District Court
Northern District of California

Canard's only source of income, unless he agreed to execute the Consent Action.  (*Id.*)  Donald Canard agreed, thus making Bricker an 80% owner and sole manager of the company.  (*Id.*)  The Agreement states that it became effective August 1, 2012, but Plaintiff alleges that it was signed after that time and backdated by Bricker.  (*Id.*)

Company minutes reflect that Bricker held a follow-up meeting on October 26, 2012, where he ratified Bricker's purchase of 10% of the company from an individual named Robert Weis that purportedly occurred on August 1.  (*Id.* ¶ 10.)  According to the FAC,

> It is unclear why this transaction was never mentioned in the Consent Action, or when the transaction actually occurred, or whether it too was backdated to August 1, 2012.  Notably, the Consent Action states that Bricker already personally owned an 80% interest in the company, so the purchase from Weis was somehow already included in the Consent Action.

(*Id.*)  Minutes also indicate that Bricker created a "Vesta Irrevocable Trust" with "an unknown beneficiary and which held unknown company assets."  (*Id.*)

As in the original complaint, in the FAC Plaintiff contends that he is entitled to the value of his 44% ownership interest in the Company, estimated to be at least $2,000,000, as well as profit distributions he would have received had 32K Studios properly reissued his ownership interest in the Company on October 16, 2013.  (*Id* ¶¶ 9, 11.)

## II.    Relevant Procedural History

The Court dismissed the fraud count alleged in the original complaint, concluding that Plaintiff had failed to plead fraud sufficiently for two primary reasons.  First, the Court concluded that Plaintiff omitted "the time, place, and content of any purported misrepresented fact or omission of material fact[,]" thus failing the particularity requirements of Rule 9(b).  *Canard*, 2015 WL 846997, at *6.  Second, the Court noted that Plaintiff's fraud claim was properly construed as one for "promissory fraud," a "subspecies of fraud" that requires alleging facts sufficient to draw a plausible inference that Bricker's statements were actually false when made such that he did not have intent to honor the Option Agreement.  *Id.*  So construing Plaintiff's claim, the Court noted that Plaintiff's mere allegation that the Option Agreement was a sham to garner Bricker control of the company was "conclusory" and unsupported, and therefore

1    insufficient to plead promissory fraud.  (*Id.* at 11.)

2                              **LEGAL STANDARD**

3          A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege

4    "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

5    550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but

6    mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

7    556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling

8    on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

9    construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

10   *Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  This involves drawing all

11   reasonable inferences in favor of the nonmoving party. *Retail Prop. Trust v. United Bhd. of*

12   *Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted).  "[D]ismissal

13   may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged

14   under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th

15   Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S.

16   319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive

17   issue of law.").

18         Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

19   which a party is only required to make "a short and plain statement of the claim showing that the

20   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

21   recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

22   *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are

23   insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

24   2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

25   or counterclaim may not simply recite the elements of a cause of action, but must contain

26   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

27   defend itself effectively.").  A claim has facial plausibility when the court can "draw the

28   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

United States District Court
Northern District of California

4

663.  Facts that only permit the court to infer a "mere possibility" of misconduct are not enough.

*Id.*  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 663-64.

Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In particular, the complaint must include specificity regarding the charged conduct, including the "who, what, when, where, and how."  *Reed v. Wells Fargo Bank*, No. C-11-00194-JSW, 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011); *see also Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (same).  "[T]he circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

## DISCUSSION

Defendants assert that the FAC "is not materially different from [the] original complaint" and therefore Plaintiff's fraud count should still be dismissed for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and failure to state a claim of promissory fraud.  Plaintiff has now alleged additional facts to support his claim and meet the particularity requirements of Rule 9(b), and the FAC now includes sufficient facts to support a plausible inference of promissory fraud.

## I.    The FAC Fraud Claim Complies with Rule 9(b)'s Particularity Requirements

Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9.  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Plaintiff has added facts that identify the time, place, and content of alleged

United States District Court
Northern District of California

5

misrepresentations.  The "who" and the "what" of the misrepresentations was alleged in the initial complaint and appears now in the FAC: Bricker told Canard that the Option Agreement was a temporary fix and that Canard would get his share of the company back when his legal proceedings in Texas were over.  And in the FAC, Plaintiff now alleges the "when," "where," and the "how":  that Bricker's allegedly false statements occurred during a series of phone calls and an in-person meeting in Texas in August of 2012.  (Dkt. No. 16 ¶ 7.)  Plaintiff has therefore met the particularity requirement of Rule 9(b).

**II.     The FAC Fraud Count States a Claim Upon which Relief can be Granted**

In the context of promissory fraud claims, a Plaintiff must allege facts that in context give rise to a plausible inference that, at the time of contract formation, the defendant did not have an intent to honor the contract.  *See Canard*, 2015 WL 846997, at *6.  A plaintiff may do so by alleging evidence of "inconsistent contemporaneous statements or information" or a "later statement by the defendant along the lines of 'I knew it all along[,]'" *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 & n.9 (9th Cir. 1994), or circumstantial evidence that explains why the statement was misleading when made.  Such circumstantial evidence may include "the shortness of time between later revealed truth and prior statements[,]" *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1112 (D. Nev. 1998), or a policy or plan inconsistent with the agreement, *see Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 639 (1996) (finding sufficient allegations that defendant's promises of permanent employment and salary increase were false when made as evidenced by the defendant's policies to the contrary and planned merger, which could have eliminated plaintiff's job).  However, a defendant's later failure to honor the agreement is irrelevant to proving that the statements were false when made.  *See, e.g.*, *Bio-Horticultura Las Parritas, S.A. de C.V. v. Aviara Parkway Farms, Inc.*, No. 14cv0892-WQH-DHB, 2014 WL 4955711, at *4 (S.D. Cal. Sept. 30, 2014)*; Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001)*; Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000).

Here, the specific statement by Bricker that serves as the basis of the fraud claim is his alleged representation to Plaintiff that "the Option Agreement was simply a way to protect 32K

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Studios during the pendency of the Texas legal matter, and that [Plaintiff] would have his interest

2  returned as soon as that matter was resolved." (Dkt. No. 16 ¶ 7.)  As a threshold matter, the Court

3  rejects Defendants' argument that the FAC fails to allege falsity of the statement.  Defendants

4  contend that the Texas legal matter is not "resolved," so any promise to return his interest when it

5  is resolved cannot have been broken.  Put another way, the FAC alleges a false statement of failure

6  to return Plaintiff's share that turns on a condition precedent to performance—*i.e.*, resolution of

7  the Texas matter—but Defendants insist that that condition precedent has not occurred.  As an

8  aside, the Court notes that the FAC nowhere alleges that the Texas legal matter resolved.

9  Nevertheless, the Court again grants Defendants' request to take judicial notice of Plaintiff's

10  conviction and sentence in the Texas matter, as it did in resolving the earlier motion to dismiss.

11  *See Canard*, 2015 WL 846997, at *4.  In light of the judicially noticeable fact that the criminal

12  matter resulted in conviction, Defendants' argument that the matter did not "resolve" because

13  Plaintiff is still on probation is a non-starter, as the Court must draw all inferences in Plaintiff's

14  favor at this stage of litigation.  *See Retail Prop. Trust*, 768 F.3d at 945. Accepting all facts alleged

15  as true and drawing all inferences in Plaintiff's favor, the FAC alleges that Bricker was engaged in

16  an effort to take control of 32K Studios on multiple fronts.  In August 2012, at Bricker's

17  instruction, Plaintiff sold his 44% share to the company for $4000 with the option to buy it back;

18  as a result, Bricker's shares in the company increased accordingly.  Around the same time, Bricker

19  threatened the only other voting member of 32K Studios to sign the unanimous Consent Action;

20  with that, Bricker became the sole manager and officer of the company, and dissolved its bylaws.

21  The effective date of the Option Agreement and the Consent Action were given the same date:

22  August 1, 2012.  On that same date, according to meeting minutes, Bricker also purchased another

23  10% interest in the company from an individual named Robert Weis, although for some reason

24  that purchase was not ratified until October 26, 2012.  Drawing all reasonable inferences in

25  Plaintiff's favor, these allegations are consistent with and plausibly allege a scheme to take

26  complete control of 32K Studios, which is circumstantial evidence from which a trier of fact could

27  infer that Bricker never intended to honor the Option Agreement when he urged Canard to enter it.

28  Defendants' arguments to the contrary are unpersuasive, as they urge the Court to reject

7

well-pleaded factual allegations and draw inferences *against* Plaintiff, flipping the 12(b)(6) standard on its head.  For example, Defendants contend that Bricker's taking control of the company is not evidence of a malevolent scheme and intent not to return Plaintiff's share, but rather was a "necessary consequence of the company repurchasing Plaintiff's interest" and that "nothing untoward or improper can be inferred from it."  (Dkt. No. 21 at 6.)  Likewise, Defendants ask the Court not to draw any negative inferences from Bricker's purchase of Weis's 10% interest in 32K Studios.  (*Id.* at 7.)  In short, Defendants ask the Court to infer that the facts alleged in the FAC merely reflect "organizational changes made necessary by Plaintiff's departure," "new ownership percentages held by the remaining owners," and "reorganiz[ation] of the company's management structure so it could continue to do business after Plaintiff's departure."  (*Id.*)  Were the Court to draw all inferences in Defendants' favor, this may well be the plausible inference that it would draw.  However, the law requires the Court to draw all inferences in favor of Plaintiff. *See Retail Prop. Trust*, 768 F.3d at 945.  In so doing, the facts alleged give rise to the plausible inference that Bricker was engaged in a scheme to wrest control of the company, which is circumstantial evidence of his intent not to honor the Option Agreement sufficient to plead promissory fraud.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's fourth count alleging fraud is DENIED.  Defendants are directed to answer the FAC by May 14, 2015.

This Order disposes of Docket No. 16.

**IT IS SO ORDERED**.

Dated: April 30, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

8